UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JERMAINE STEWART, ET AL | CIVIL ACTION |
| VERSUS | NO. 10-4016 c/w<br>11-0235, 11-0250 &<br>11-1764 |
| GRAND ISLE SHIPYARD, INC., ET AL | SECTION "C" 2 |

## ORDER AND REASONS

Before the Court is Motion for Judgment on the Pleadings filed by Cross-Defendant and Counter-Claimant Global Oilfield Contractors, L.L.C. ("Global"), and Motion for Summary Judgment filed by Plaintiff-in-Limitation, Defendant and Cross-Claimant Lester J. Plaisance, Inc. ("Plaisance"). (Rec. Docs. 58, 66). Having considered the record, memoranda of counsel, and the applicable law, the Court rules as follows.

### I. Background

The underlying accident in these consolidated cases involves an 18-foot vessel's allision with a barge following an alleged throttle malfunction on August 7, 2010, in Cameron, Louisiana. (Rec. Doc. 1 at ¶ 3). Plaisance entered into a bareboat charter agreement with Global for the vessel LA 3683-AJ, bearing official number LAZ12799B972 ("the vessel"), which Plaisance owned, on June 15, 2010. (Rec. Doc. 45 at ¶ 2, 3). Global in turn sub-chartered the vessel in another bareboat charter agreement to Grand Isle Shipyard, Inc., ("GIS"). (Rec. Doc. 45 at ¶ 4). Plaintiff/Claimant

1

employees of GIS, Jermaine Stewart, Gary Smith, and Dwayne Vessel, were aboard the vessel and allegedly injured in the allision. (Rec. Doc. 67-1 at 2). Plaintiffs filed complaints alleging negligence and unseaworthiness under the Jones Act and general maritime law against Plaisance, Global and GIS. Plaisance and Global filed petitions for limitation of liability. Plaisance filed a cross-claim against Global, and Global filed a counterclaim against Plaisance. (Rec. Docs. 45, 51).

The two motions before the Court raise the same issue: whether Global owes Plaisance defense and indemnity under the charter party and whether Global was required to ensure that GIS named Global and Plaisance as additional insureds with regard to the sub-charter. In its motion for judgment on the pleadings, Global seeks dismissal of the Plaisance's cross-claim with the arguments 1) that the Bareboat Charter between the parties provides unequivocal evidence that Global did not agree to indemnify and defend Plaisance for its own negligence or unseaworthiness, and 2) that Global was not required to ensure that GIS named Plaisance as an additional insured on GIS's Protection and Indemnity ("P&I") Insurance. (Rec. Doc. 58-1 at 4-14). Plaisance seeks summary judgment on its cross-claim against Global with the arguments 1) that Global agreed in the Bareboat Charter Agreement to defend, indemnify and hold harmless Plaisance against the Plaintiffs' claims, 2) that extrinsic evidence establishes that Global agreed to defend and indemnify Plaisance against the plaintiffs' claims, 3) that Plaisance is entitled to defense and indemnity because it was not negligent, and 4) Global agreed to ensure that sub-charterer, GIS, obtained the required insurance coverage, entitling Plaisance to recover its insurance deductible from Global. (Rec. Docs. 66 at 7-14). Both parties argue that the other owes reasonable attorneys fees pursuant to the terms of Bareboat Charter. (Rec. Docs. 58 at 14, 66 at 14).

## II. Law and Analysis

**A. Standard of Review**

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). In determining whether dismissal is appropriate, the court must decide whether the facts alleged in the pleadings, if true, would entitle the plaintiff to some sort of legal remedy. *Ramming v U.S.*, 281 F. 3d 158, 162 (5th Cir. 2001); (citing *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994)). Judgment on the pleadings is appropriate only if there are no disputed issues of material fact and only questions of law remain. *Voest–Alpine Trading USA Corp. v. Bank of China,* 142 F.3d 887, 891 (5th Cir.1998).

A district court can grant a motion for summary judgment only when there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine issues of material fact exist; if it meets that burden, the nonmoving party must then come forth to establish the specific material facts in dispute. 477 U.S. at 323; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

**B. Global's Motion for Judgment on the Pleadings**

1. Scope and Application of the Indemnity Provisions

The parties do not contest that federal maritime law governs this dispute. Indemnity clauses in maritime contracts are generally enforceable, and the interpretation of such an indemnity clause is ordinarily governed by principles of federal maritime law. *Corbitt v. Diamond Drilling Co.*, 654 F.2d 329, 332 (5th Cir. 1981). Under either federal maritime law or state law, "a court may not look beyond the written language of the document to determine the intent of the parties unless the disputed contract provision is ambiguous." *Id*. at 333-34. However, this Court has recognized that if the disputed language is ambiguous, an inquiry must be made into the intent of the parties. *Wilson v. TECO Ocean Shipping, Inc.*, No. 08-1518, 2011 WL 722734, at *2 (E.D. La. Feb. 22, 2011).

"A contract to indemnify another for his own negligence imposes an extraordinary obligation." *Corbitt*, 654 F.2d at 333.  "'Long-established principles of general maritime law require that "indemnification for an indemnitee's own negligence be clearly and unequivocally expressed.'" *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 540 (5th Cir.1986)(quoting *Seal Offshore, Inc. v. American Standard, Inc.*, 736 F.2d 1078, 1081 (5th Cir.1984)).

> A contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage.

*Corbitt,* 654 F.2d at 333.

"A basic principle of contract interpretation in admiralty law is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous." *Chembulk Trading LLLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004). While a "contract need not contain any special words to evince an intention to create a right of indemnity for

independent contractual liabilities", it "*must clearly express such a purpose.*" *Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 222 (5th Cir. 2005) (emphasis in original). The Fifth Circuit has held that an indemnification provision for "any and all claims" alone will not include the negligence of the indemnitee. *Seal Offshore,* 736 F.2d at 1081. Finally, where a merger clause makes clear that a written agreement is the final expression of both parties to a contract and that it is a complete and accurate integration of the terms, the writing may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement. *See Har-Win, Inc. v. Consol. Grain & Barge Co.*, 794 F.2d 985, 987 (5th Cir. 1986); *Franz Chem. Corp. v. Philadelphia Quartz Co.*, 594 F.2d 146, 149 (5th Cir. 1979).

"A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). The relevant contract in the crosssclaim is the Bareboat Charter Agreement between Plaisance and Global. (Rec. Docs. 46-1). There are three relevant indemnity provisions in the agreement. Paragraph 11 states:

> Charterer shall protect, defend, indemnify and hold harmless Owner, the Vessel and their insurers against all … claims of any type whatsoever which may be imposed upon or filed against Owner, the Vessel or their insurers … which may arise due to the use, operation or navigation of the Vessel by Charterer under the terms of this Agreement.

(Rec. Doc. 46-1 at 3, ¶ 11). Paragraph 12 provides in pertinent part:

> Charterer also agrees to protect, defend, indemnify and hold harmless Owner, Vessel and their insurers against any such asserted claims … lawsuit … or charges brought against Owner, Vessel or their Insurers.

(Rec. Doc. 46-1 at 3-4, ¶ 12). And finally, Paragraph 21 states:

> It is specifically understood between the parties that under no circumstances, while the Vessel is under bareboat charter to and being operated by Charterer shall Owner be responsible for any cost, expense or liability, of any kind or nature, all of which is accepted by Charterer and with the understanding between the parties that the bareboat

5

charter of the Vessel is further intended to relieve Owner of any and all expenses and costs, as well as liability.

(Rec. Doc. 46-1 at 4, ¶ 21). The agreement provides that Global defend and indemnify Plaisance for some claims. However, it does not contain language that clearly and unequivocally provides that Global must defend and indemnify Plaisance for its own negligent actions, and is not ambiguous in this regard.

The Fifth Circuit, in *Randall v. Chevron U.S.A., Inc.*, 13 F.3d 888 (5th Cir. 1994) *overruled on other grounds by Bienvenu v. Texaco, Inc.*, 164 F.3d 901 (5th Cir. 1999), held that the duty of one party to "indemnify and hold harmless [indemnitee] against all claims ... howsoever arising" was not sufficiently clear and unequivocal to shift liability for the indemnitee's negligence onto the indemnitor.[1] *Id.* at 906. In *East v. Premier, Inc.*, 98 F. App'x 317, 320 (5th Cir. 2004) (per curiam) (unpublished) the Fifth Circuit found that the contract language[2], while lacking an explicit reference to negligence, expressed the parties' desire to indemnify for negligence. *Id.* at 321. The court reasoned that by specifying the type of cause of action to be covered, along with language identifying to whom the indemnification provision was to apply, the agreement provided enough clarity to deduce the parties' intention of indemnification for the negligence of indemnitor's invitees under the terms of the contract. *Id.* at 321-22.

This Court finds that the Bareboat Charter Agreement's indemnity provisions more closely resemble those in *Randall* than those in *East*. Unlike the agreement at issue in *East*,

---

[1] The charter agreement in *Randall* required the vessel owner to "indemnify and hold harmless [charterer] against all claims … as well as against any and all claims for damages, whether to person or property, and howsoever arising in any way directly or indirectly connected with the possession, navigation, management, and operation of the vessel."
[2] The provisions read in pertinent part that the "[Indemnitor] shall be responsible for … all causes of action … arising in connection [with] … [Indemnitor's] invitees on account of bodily injury," and that the provisions "shall exclusively govern the allocation of risks and liabilities of said parties *without regard to cause*." Court held the provision only applied to Operator-Indemnitor's invitees, not the Operator nor Contractor. *East*, 98 F. App'x at 320.

which addressed the concerns of specific causes of action and parties covered by the indemnity provision, the Bareboat Charter's indemnity provisions are similar to *Randall's* "any and all claims … howsoever arising" language. The Charter states that Global will indemnify Plaisance for "all … claims of any type whatsoever," "[Global] also agrees to protect, defend, indemnify and hold harmless [Plaisance], Vessel and their insurers against any … claims," and "to relieve [Plaisance] of any and all expenses and costs, as well as liability." (Rec. Doc. 46-1 at 3-4, ¶ 11, 12, 21). The provisions do not expressly mention that personal injury claims of Charterer or Sub-Charterer's employees will trigger the right to defense and indemnity, or any specific causes of action for that matter, nor do they include an explicit reference to indemnity for negligence to provide evidence of the parties' intent.

This Court finds that the contract is not ambiguous; therefore the extrinsic evidence is not considered for the 12(c) motion for judgment on the pleadings. This Court also notes that the merger clause in the Bareboat Charter reflects the parties' intention that the Charter constitutes the entire agreement and supersedes any prior written or oral agreements.[3] (Rec. Doc. 46-1 at ¶ 25). Therefore, the merger clause negates the consideration of the extrinsic evidence.

2. Seaworthiness of the Vessel

A contractual waiver of seaworthiness is enforceable. *A. Kemp Fisheries, Inc. v. Castel & Cook, Inc.*, 852 F.2d 493 (9th Cir. 1988); *Zidell, Inc. v. Cargo. Freight and Subfreight of the Barge ZPC 404*, 661 F.Supp. 960 (W.D.Wash. 1987). An acceptance provision in a charter providing that the inspected and delivered vessel is seaworthy must be in clear and unequivocal

---

[3] The clause reads: "This Agreement constitutes the entire agreement between the parties concerning this Agreement and supersedes all prior agreements, written or verbal understanding or agreements, and, this Agreement is the sole agreement between the parties as to the charter of the Vessel." (Rec. Doc. 46-1 at ¶ 25).

terms to be sufficient to constitute a waiver of the implied warranty of seaworthiness. *Thomas Jordan, Inc. v. Mayronne Drilling Mud, Chem. & Eng'g Serv.*, 214 F.2d 410, 413 (5th Cir. 1954).

The Plaintiffs' allege that Plaisance failed to provide a seaworthy vessel. (Rec. Doc. 27 at ¶ 5). The bareboat charter does not mention "seaworthiness" or "unseaworthiness" in any of the indemnification provisions. (Rec. Doc. 46-1 at 3-4, ¶ 11, 12, 21). Seaworthiness is only mentioned in paragraph 3 of the Bareboat Charter, and only in reference to precluding claims brought by Charterer against Owner, not by claims originating from third-parties. (Rec. Doc. 46-1 at 1-2, ¶ 3).

3. Insurance Claim

The Bareboat Charter Agreements between Plaisance and Global and between Global and GIS are identical, written on the same form contract provided by Global, except that only the agreement between Plaisance and Global contains Exhibit I "Insurance Requirements." (Rec. Doc. 46-1, 46-2). Exhibit I of the Bareboat Charter Agreement between Plaisance and Global states that "Sub-Charterer GIS [is] to provide all necessary Insurances to cover this vessel and related exposures for P&I and Pollution … naming and waiving Charterer and Vessel owner." (Rec. Doc. 46-1 at 7). Although this addendum is not attached to the the Bareboat Charter Agreement between Global and GIS as part of the cross-claim, it was later produced as part of the Global-GIS Sub-Charter. (Rec. Docs. 46-2, 119-3 at 11). In any event, the provision stipulates that GIS is to provide the necessary insurance coverage, but does not mandate that Global is to ensure that GIS obtains and lists Plaisance as an additional insured under that coverage. This does not render the provision meaningless, as Plaisance argues, but rather gives

8

the agreement its plain meaning. Plaisance could have altered the language during negotiations to require Global guarantee that GIS added Plaisance as an additional insured on its insurance coverage. Alternatively, Plaisance could have added GIS to the first Bareboat Charter Agreement or separately contracted with GIS for the insurance coverage directly.

Plaisance further argues that the extrinsic evidence, the affidavits and the letter from Global's counsel to GIS's counsel, evinces the intentions of the parties to include Plaisance on GIS's insurance coverage. However, because the insurance clause is unambiguous, the extrinsic evidence is unwarranted and not considered in this Court's decision on this issue under the motion for judgment on the pleadings.

4. Attorney's Fees

Both sides assert a claim to attorney's fees, should they prevail in their claims pursuant to the Bareboat Charter. (Rec. Doc. 46-1 at ¶ 22). The Bareboat Charter sets forth that "[e]ach Party who prevails in any claim or action shall be entitled to receive reasonable attorney fees and costs from the other should it be necessary to retain the services of any attorney to protect or pursue any of its rights under this Agreement …." (Rec. Doc. 46-1 at ¶ 22). Pursuant to the "American Rule," the general rule in admiralty is that the prevailing litigant is not entitled to collect attorney's fees from the loser absent a statutory or contractual provision to the contrary, or bad faith. *Galveston County Nav. Dist. No. 1 v. Hopson Towing Co., Inc.*, 92 F.3d 353, 356 (5th Cir. 1996). As the two sides have contractually agreed to the allocation of attorney's fees, this Court will enforce that contractual provision to award attorney's fees to Cross-Claimant Global for the

reasonable attorney fees and costs incurred to successfully pursue the 12(c) motion for judgment on the pleadings.[4]

**C. Plaisance's Motion for Summary Judgment**

This Court makes no determination at this time concerning whether Plaisance was in fact negligent or whether it did not provide a seaworthy vessel. The components of the motion regarding Plaisance's cross-claim against Global for defense and indemnification for its own negligence and/or unseaworthiness and for Global's failure to ensure GIS obtained and added Plaisance to the insurance coverage are dismissed on the motion for judgment on the pleadings.

As a final note, the Court acknowledges the apparent incongruity of Global's acceptance of defense and indemnity from GIS with virtually identical language, along with GIS's direct obligation to procure insurance for Global.[5] That distinct issue is derived from those parties' agreement and is simply not before this Court. The Court also acknowledges that the complexity of the legal indemnity and defense obligations unambiguously set forth in contracts continues to confound lawyers and laymen alike.

### III. Conclusion

Accordingly,

IT IS SO ORDERED that the motion for judgment on the pleadings filed by Global Oilfield Contractors, L.L.C. is GRANTED. (Rec. Doc. 58).

IT IS SO ORDERED that the motion for summary judgment filed by Lester J. Plaisance,

---

[4]The determination as to the amount of reasonable attorney's fees will be referred to the Magistrate Judge for determination, if the parties can not agree.

[5]That insurance addendum takes on critical significance given the fact that it is part of a contract with GIS as a signatory. GIS was not a signatory to the Plaisance/Global charter.

Inc., is partially DENIED. (Rec. Doc. 66).

New Orleans, this 23rd day of December, 2011.

                                                           _____
                                                           HELEN G. BERRIGAN
                                                           UNITED STATES DISTRICT JUDGE